**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Dongguan Yuhong ShenXuan Tech Co., Ltd, <br><br> *Plaintiff*, <br><br> v. <br><br> John Doe, <br><br> *Defendant*. | **CASE NO.** 23-cv-268 <br><br><br> **Judge**: Honorable Franklin U. Valderrama <br><br> **Magistrate Judge**: Honorable Susan E. Cox |

**[EMERGENCY]PLAINTIFF'S MOTION FOR**
***EX PARTE* TEMPORARY RESTRAINING ORDER**

**Table of Contents**

I. INTRODUCTION ..................................................................................................... 1

a) Amazon Intellectual Property Protection Loophole ............................................. 1

b) The Plaintiff ........................................................................................................ 3

c) The Defendant, Its Copyright Complaints, And The Asserted Copyright ........................ 3

d) Defendant's Blackmail Activity ............................................................................ 4

II. LEGAL STANDARD .............................................................................................. 7

III. ARGUMENT ........................................................................................................ 8

a) Plaintiff Has an Overwhelming Likelihood of Success on the Merits of Its Claims .......... 8

i. Plaintiff's product was independently created at least 2 years before Defendant's
   copyright ............................................................................................................... 9

ii. Defendant's copyright is invalid because the copyrighted work is an useful article
   without any artistic value ..................................................................................... 10

b) Plaintiff Will Suffer Irreparable Harm If the Court Withholds an Emergency TRO Relief
   ........................................................................................................................... 13

c) Inadequacy of Legal Remedies ........................................................................... 15

d) The Balancing of Harms Tips in Plaintiff's Favor ................................................ 17

e) Public Interest Is Served by Entry of the Injunction. ........................................... 17

IV. THE EQUITABLE RELIEF PLAINTIFF SOUGHT IS APPROPRIATE ................... 18

a) An TRO Directing Defendant to Retract the Amazon Trademark Infringement Complaint
   and Refrain From Filing New Complaint Is Appropriate ........................................ 18

b) No Bond Should Be Required Because Defendant's Own No Trademark Rights for

    Plaintiff to Infringe ......................................................................................................... 19

V. CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v Mead Johnson & Co.*,
971 F.2d 6, 11-12 (7th Cir. 1992)..................................................................................8

*Beyond BlondProds. v. Heldman,*
479 F. Supp. 3d 874,888 (C.D. Cal. 2020)...................................................................18

*Country Fare LLC v. Lucerne Farms,*
No. 11-CV-722 (VLB), 2011 WL 2222315, at *5 (D. Conn. June 7, 2011)...........15,17

*D.U. v. Rhoades*,
825 F.3d 331, 338 (7th Cir. 2016)...................................................................................9

*Fonar Corp. v. Domenick*,
105 F.3d 99, 104 (2d Cir. 1997)....................................................................................10

*Galvin v. N.Y. Racing Ass'n,*
70 F. Supp. 2d 163, 170–71 (E.D.N.Y.), *aff'd sub nom. Galvin v. N.Y. Racing Ass'n, In*c.
(NYRA), 166 F.3d 1200 (2d Cir. 1998)..........................................................................15

*GEFT Outdoors, LLC v. City of Westfield*,
922 F.3d 357, 364 (7th Cir. 2019) ..................................................................................8

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*,
549 F.3d 1079, 1086 (7th Cir. 2008)......................................................................8,15,16

*Goodman v. Illinois Dept. of Financial and Professional Regulation*,
430 F.3d 432, 437 (7th Cir. 2005)...................................................................................7

*Grupo Mexicano de Desarrollo S. A. v. All. Bond Fund, Inc.*,
527 U.S. 308, 318-19 (1999)..........................................................................................18

*JCW Investments, Inc. v. Novelty, Inc.,*
482 F.3d 910, 915 (7th Cir. 2007)...................................................................................9

*Jetmax Ltd. v. Big Lots, Inc*.,
No. 15-CV-9597, 2017 WL 3726756, at *4 (S.D.N.Y. Aug. 28, 2017).........................11

*King-Devick Test Inc. v. NYU Langone Hosps*.,
No. 17 Civ. 9307, 2019 WL 78986, at *3 (S.D.N.Y. Jan. 2, 2019)...............................10

*Mays v. Dart,*
453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020).................................................................7

*Mays v. Dart*,
974 F.3d 810, 818 (7th Cir. 2020)...................................................................... 8

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*.,
296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018)...........................14

*Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*,
896 F.3d 809, 816 (7th Cir. 2018)...................................................................... 8

*Roland Mach. Co. v. Dresser Inds., Inc*.,
749 F.2d 380, 386 (7th Cir. 1984)...................................................................... 15,16

*Signode Corp. v. Weld-Loc Systems, Inc*.,
700 F.2d 1108, 1111 (7th Cir.1983)...................................................................... 15

*Star Athletica, L.L.C. v. Varsity Brands, Inc*.,
—— U.S. ——, 137 S. Ct. 1002, 1008, 197 L.Ed.2d 354 (2017)...................................10,11,12,13

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
436 F. Supp. 3d 653, 665 (S.D.N.Y. 2020), order vacated in part on reconsideration, No. 18 CIV. 5075 (LGS), 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020)................................................ 12

*Ty, Inc., v. Jones Grp., Inc*.,
237 F.3d 891, 895 (7th Cir. 2001)...................................................................... 8,16

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167, 1169 (7th Cir. 1997)...................................................................... 9

*Wis. Right to Life, Inc. v. Barland*,
751 F.3d 804, 830 (7th Cir. 2014)...................................................................... 9

**Statutes**

17 U.S.C. § 101...................................................................................................11

17 U.S.C. § 102(a)(5)...........................................................................................11

17 U.S.C. § 102(b)...............................................................................................10

17 U.S.C. § 410(c)...............................................................................................10

**Rules**

Fed. R. Civ. P. 65...............................................................................................1,18

**Books**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright 12.11[D]*, at 12-175 (2001).........................9

Compendium Of U.S. Copyright Office Practices § 924 (3d ed. 2017)........................................11

Plaintiff Dongguan Yuhong ShenXuan Tech Co., Ltd ("Plaintiff"), respectfully moves the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a Emergency *Ex Parte* temporary restraining order, 1) refraining John Doe Defendant and its affiliates from filing or otherwise communicating any allegations of copyright infringement by Plaintiff to any third party for the duration of the instant litigation relative to the Plaintiff's nose hair trimmer product referenced in the Complaint, 2) ordering Defendant to retract the copyright infringement complaints it has filed to Amazon against Plaintiff, and 3) ordering Amazon to reinstate Plaintiff's 4(four) ASINs.

## I.      INTRODUCTION

Amazon is the world's largest online retailer; it provides oftentimes the only platform for small businesses to reach consumers. This lawsuit deals with Amazon seller John Doe Defendant who exploits loopholes in Amazon's IP enforcement procedure to coerce Plaintiff out of legitimate business operations. Plaintiff faces an imminent threat that its Amazon selling accounts could be deactivated at any time. Such dire consequences warrant immediate *ex parte* TRO relief from this Court.

### a)      **Amazon Intellectual Property Protection Loophole**

Amazon has a system to protect Intellectual property owners' right. The original purpose to set up this system is good. A right owner may file a complaint against an infringer to Amazon, claiming the infringer has infringed the right owner's trademark, patent, and/or copyright. Then Amazon has a system to evaluate the right owner's evidence. Once Amazon determined that infringement has happened, Amazon's employee will delist the infringer's ASINs, deprive the infringer's selling privilege.

However, this system is not working as expected. Amazon employees will not review the

evidence like the judicial system, yet they have the power to freeze asset, delist ASINs, and close store, like a Court. For example, a trademark owner filed a complaint against a competitor, claiming trademark infringement. Amazon will not spend time to decide whether the trademark was acquired fraudulently or whether the infringement has actually met "likelihood of confusion". When a valid trademark certificate is presented to Amazon, the Amazon employee will automatically presume the complaint is valid, and then support the stance of the trademark owner and then shut down the respondent's store. *See*. Declaration of Yong Chen, at ¶22 ("Chen Decl.").

This practice creates a loophole. Patent or trademark certificates are hard to get, yet Copyright certificate is not. So people like the Defendant started a black market business, using Amazon's intellectual property protection system as their tool to blackmail legit sellers on Amazon. Chen Decl. at ¶23.

Blackmailer will find a target on Amazon. Normally the target will be a top-selling product from a big Amazon seller. Then Blackmailer will file a copyright application with the Copyright Office, depicting that product as its own creation. Because the Copyright Office will not review copyright application as strictly as the USPTO, Blackmailer will get his copyright application in several months.

Once the Blackmailer gets his copyright certificate, he will wait until important times for the seller, such as Thanksgiving, Christmas, or New Year. He then will file a copyright infringement complaint to Amazon against this seller. Amazon, in receipt of the complaint and the copyright certificate, without doing further investigation, will presume the complaint is valid and then will delist the Seller/Respondent's selling privilege. Once Seller/Respondent's selling privilege is taken down by Amazon, Blackmailer will then contact the grievance seller,

demanding ransom. In order to keep doing business in the peak season and keep store's selling rank, most grievance sellers will pay the ransom.

But not for the Plaintiff in this case. Plaintiff in this case decided to take action to stop this vicious and vile criminal activity.

### b) The Plaintiff

Plaintiff owns and operates an Amazon store "YuHongShenXuan," the Merchant Token of this store is A4ETHVB4UUJ72. Plaintiff mainly sells one product using this store, a Nose Hair Trimmer under the brand name ZORAMI. Chen Decl. at¶4. Plaintiff's products were all purchased from a manufacturer in China. This manufacturer designed this nose hair trimmer clipper independently since 2014 and started to manufacture this product as early as 2017. This product is sold on Amazon.com under many different brand since 2018. *Id*. at ¶ 28. The appearance of Plaintiff's product may be seen in Exhibit 1.

### c) The Defendant, Its Copyright Complaints, And The Asserted Copyright

The real identity of the Defendant is still unknown. Plaintiff will amend the Complaint to add Defendant's identity once Amazon provided more information about the Defendant. However, Amazon has provided Plaintiff with Defendant's pseudonym and contact information. Defendant's pseudonym is TY and the contract information is  timerya8743@outlook.com.

On January 3, Plaintiff's store received an email from Amazon. The title was "Notice: Policy Warning." *See* Exhibit 2. This Notice informed the Plaintiff that its nose hair clipper infringed someone's copyright. In that Notice, Amazon provided Plaintiff with the Rights Owner's contact details: TY, timerya8743@outlook.com. Plaintiff's ASIN B098NSHBQK was taken down by Amazon due to Defendant's complaint.

 On January 5, 2023, Plaintiff's store received an other email from Amazon. The title was

also "Notice:Policy Warning." *See*. Exhibit 3. This Notice informed the Plaintiff that its nose hair clipper infringed someone's copyright. In this Notice, Amazon provided Plaintiff with the Rights Owner's contact details:TY, timerya8743@outlook.com. Same Rights Owner as the January 3 email. In this notice, Amazon also provided the Copyright Certification Number:VA0002294116("Asserted Copyright"). Plaintiff's ASIN B0994HKZRF was taken down by Amazon due to Defendant's complaint.

On January 18, 2023, Plaintiff's store received a third email from Amazon. The title was the same. *See*. Exhibit 4. The Rights Owner's contact details are the same as the two previous notice: TY, timerya8743@outlook.com. the Copyright Certification Number is also VA0002294116. Plaintiff's last two remaining ASINs B0BFQFFRQL and B0BFQG8MSR were taken down by Amazon due to Defendant's complaint.

Till January 18, 2023, Plaintiff's Amazon store has zero(0) listing products. All Plaintiff's product ASINs were taken down. **Plaintiff's entire Amazon business was annihilated**.

### d) Defendant's Blackmail Activity

The entire blackmailing process was well documented by Plaintiff, and can be seen in Exhibit 6. Translation of this email Chain is added in this Exhibit. All Chinese words are translated into English(red color).

On December 30, 2022, Plaintiff's manufacturer with email address <philno1@163.com>, received an email from a man named "will we", whose email address is <timerya8743@outlook.com>. Chen Decl. at ¶ 24. This is the same email address used in the Amazon Copyright Complaint. *Id*. In the December 30 email, the Defendant quite bluntly stated: "how much does the seller wants to pay to solve this issue," "the Right Owner will withdraw his

complaint once he receives payment from the Seller." See. Ex. 6, at 6. **At this point, Will We is pretending to be a middle man, trying to help Plaintiff and its manufacturer to negotiate with the Copyright Owner**.

Later that day at 17:40, Will We replied, demanding $420,000. Plaintiff's manufacturer replied $50,000 is the best Plaintiff can pay. Will We then replied "Very soon, we will take down the seller's color white product." *Id*. at 5. Will We then continued to say "$50,000 is not going to work," "I know the daily and month sales, it costs you money every day the issue is not solved." *Id*. He then threatened "the product in white color will also be taken down by us. " *Id*. Plaintiff's white color product was taken down by Defendant on January 5, 2023. Chen Decl. at¶8.

Plaintiff's manufacturer did not reply Will We's email for 3 day. Will We got worried, then contacted Plaintiff's manufacturer on January 3, 2023, stating that "Hello, after **our** re-evaluation, we can accept $250,000 to settle this case, and withdraw our complaints to Amazon. We will also sold you our copyright certificate, you can tell this to the Seller." *Id.* at 4. Will We got sloppy. When he sent this email, he forgot that he is supposed to be the middle man. He used the wrong pronoun "our." At this point, Plaintiff was certain that Will We is the Amazon Complaint initiator and he is working with a group of blackmailers.

After the manufacturer replied that they can't afford $250,000 on January 3, 3 days later on January 6, 2023, Will We then threatened "all the products under this brand will be taken down by us." *Id.* at 4. All Plaintiff's products were taken down by Defendant on January 18, 2023. Chen Decl. at¶¶9-10.

Receiving no response from Plaintiff's manufacturer, on January 8, 2023, Will We then sent Plaintiff's manufacturer an email, containing the content of their Asserted Copyright. The pictures can be seen below:



Will We state "We have hired a local American lawyer and are ready to file lawsuit against you; at that time, the seller's account will be closed and the amount will be frozen. please let the Seller know." *Ex. 6,* at 4. Till today, the Defendant has not hired any American lawyer or filed any lawsuit against the Plaintiff for copyright infringement.

On the same day, Will We continued to threaten to take down Plaintiff's 10th ranking product, a different Nose Hair Trimmer. When the manufacturer asked Will We how would he take down a different Nose Hair Trimmer design, Will We replied "**We have other copyrights**

we can use to file complaint, we won't let you know." *Id.* at 3. Will We's reply further proves Plaintiff's suspicion that this is a group of well prepared blackmailers, exploiting a loophole in the Amazon, using Copyright Certificate to blackmail sellers.

Plaintiff did not respond to Will We's threat. On January 15, 2023, at 16:55. Will We sent an email to Defendant, stating "The lowest number we can accept is half a milliion RMB($73,000). **Even if you manage to have your ASINs reinstated, we have hundreds of Amazon stores, we can use them keep filing complaints, it will eventually got your ASINs taken down again**." *Id.* at 3. This email clearly proves the real identity of Will We or the Defendant. They control hundreds of Amazon stores for the purpose of using these stores to file copyright infringement complaints against sellers, then blackmail sellers for money.

On January 17, 2023, Plaintiff proposed to pay 200,000 RMB($30,000) to end this. Will We then threatened "The copyright owner will transfer his copyright to IP law firm. When lawyer is involved, you are going to pay more than 1 million, 2 million. 200,000 rmb to get this over, are you joking? About transfer the copyright, that will be another price for that." *Id*. at 2.

Till today, the Defendant is still blackmailing Plaintiff for at least $250,000 for the withdrawal of Amazon complaint and transfer of this copyright.

## II.  LEGAL STANDARD

The legal standard employed for a temporary restraining order is the same as one for a preliminary injunction. *Mays v. Dart,* 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020) (citations omitted). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (internal quotation marks and citation omitted) (emphasis in original). To succeed, the

movant must demonstrate (i) a likelihood of success on the merits, (ii) that it has no adequate remedy at law, and (iii) that it will suffer irreparable harm if the relief is not granted. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (internal citations omitted).

If the moving party meets this three-element threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc*., 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992)).

The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364 (citing *Planned Parenthood*, 896 F.3d at 816). Finally, the court must consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc*., 237 F.3d 891, 895 (7th Cir. 2001).

## III. ARGUMENT

### a) Plaintiff Has an Overwhelming Likelihood of Success on the Merits of Its Claim

Determining whether the movant has a likelihood of success on the merits is simply a "threshold" issue, and it only requires that the movant have a "better than negligible" chance of

prevailing. *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016). Although the movant typically bears the burden of establishing its better than negligible chances, "the burdens at the preliminary injunction stage track the burdens at trial" on merits questions. *Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014)

### i. Plaintiff's product was independently created at least 2 years before Defendant's copyright

The doctrine of independent creation can be used to rebut an inference of copying "if the alleged copier can show that she instead 'independently created' the allegedly infringing work." *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 915 (7th Cir. 2007). "'A defendant independently created a work if it created its own work without copying anything or if it copied something other than the plaintiff's copyrighted work.'" *Id.* (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright 12.11[D]*, at 12-175 (2001)). The Copyright Act forbids only copying; if independent creation results in an identical work, the creator of that work is free to sell it. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169 (7th Cir. 1997).

Here, Defendant's Asserted Copyright was created in the year of 2020, and it was published on March 5, 2020. Ex. 5. Plaintiff's product was actually independently created by Plaintiff's manufacturer in 2017. In 2018, this product passed the IPX4 Test. A true and correct copy of a Test Report of Plaintiff's product dated on July 3, 2018 is attached as Exhibit 7. In 2018, Plaintiff's manufacture provided this product to different authorized seller on Amazon, selling under different brands such as Vimdiff, FlePow and ZORAMI. A true and correct copy of the customer review on August 5, 2018 is attached as Exhibit 8. In a 2019 YouTube video, the same product under brand name FlePow was nominated as the top 5 nose hair trimmers in 2019 by ReviewsVidz. See Exhibit 9. https://www.youtube.com/watch?v=_OcUikvUFUQ (Last

9

visited on January 18, 2023)

The fact is quite obvious, Plaintiff's product could not possibly have accessed Defendant's copyrighted work because Plaintiff's product was designed and manufacture at least 2 years before Defendant's copyright was created in 2020. Plaintiff did not infringe Defendant's copyright.

Defendant, by his own admission, knew about this fact. In Defendant's blackmail emails, Defendant stated multiple time that Defendant has access to Plaintiff's daily and monthly sales record, "We can see both the numbers and the sales," and "We made our decision based on market sales" *See*. Ex. 6, at 1, 4. However, Defendant still decided to file multiple vile copyright infringement complaints against the Plaintiff, leading to the total annihilation of Plaintiff's business.

ii. **Defendant's copyright is invalid because the copyrighted work is an useful article without any artistic value**

"The first element of a copyright-infringement claim is 'ownership of a valid copyright.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc*., ⸺ U.S. ⸺, 137 S. Ct. 1002, 1008, 197 L.Ed.2d 354 (2017). Plaintiffs have registered the trimmer cutter head at issue with the U.S. Copyright Office, which "constitute[s] prima facie evidence of the validity of the copyright," 17 U.S.C. § 410(c), and "creates a rebuttable presumption that the work in question is copyrightable." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997); *accord King-Devick Test Inc. v. NYU Langone Hosps*., No. 17 Civ. 9307, 2019 WL 78986, at *3 (S.D.N.Y. Jan. 2, 2019). The presumption can be overcome "by evidence that the work [is] a non-copyrightable utilitarian article," which is not copyrightable. *Fonar Corp*, 105 F.3d at 104; 17 U.S.C. § 102(b). Such is the case here.

10

Copyright does not protect useful articles as such, which are defined in the Copyright Act as "article[s] having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Importantly, however, artistic features applied on or incorporated into a useful article may be eligible for copyright protection if they constitute pictorial, graphic, or sculptural works under sections 101 and 102(a)(5) of the Copyright Act. This protection is limited to the "'pictorial, graphic, or sculptural features' [that] 'can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" *Star Athletica, LLC* , 137 S. Ct. at 1007 (quoting 17 U.S.C. § 101); *Jetmax Ltd. v. Big Lots, Inc*., No. 15-CV-9597, 2017 WL 3726756, at *4 (S.D.N.Y. Aug. 28, 2017).

 "A useful article is defined as [an] 'article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.'" *Jetmax Ltd.*, 2017 WL 3726756, at *4 (quoting 17 U.S.C. § 101). "[A] feature incorporated into the design of a useful article is eligible for copyright protection only if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work — either on its own or fixed in some other tangible medium of expression — if it were imagined separately from the useful article into which it is incorporated." *Star Athletica L.L.C.*, 580 U.S. at ——, 137 S. Ct. at 1007; *Jetmax Ltd.*, 2017 WL 3726756, at *5; *see also* COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 924 (3D ED. 2017)("COMPENDIUM(THIRD)").

 "[T]he design of a useful article is considered a pictorial, graphical, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Star Athletica*, 137 S. Ct. at 1008 (citations and quotation marks

omitted). For a design to incorporate pictorial, graphic, or sculptural features that can be identified separately from the utilitarian aspects of an article, "[t]he decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id*. at 1010. But for a design to be capable of existing independently of the utilitarian aspects of the article, "**the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article.**" *Id*.

In *Town & Country Linen Corp. v. Ingenious Designs LLC*, 436 F. Supp. 3d 653, 665 (S.D.N.Y. 2020), order vacated in part on reconsideration, No. 18 CIV. 5075 (LGS), 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020), the Court ruled that a Control Panel is not protected by the Copyright Act.



The court ruled that this Control Panel is not "capable of existing independently of " "the utilitarian aspects" of the CloserDrier. *Id* at 666. The court reasoned that because the control panel itself is a utilitarian aspect of the CloseDrier. *Citing Star Athletica*, 137 S. Ct. at 1008, 1010 ("Of course, to qualify as a pictorial, graphic, or sculptural work on its own, the feature cannot itself be a useful article or '[a]n article that is normally a part of a useful article' (which is itself considered a useful article)."). The control panel is therefore not copyrightable.

Applying the test from *Star Athletica* and the reasoning from *Town & Country Linen Corp.* here, Defendant's copyrighted cutter head only has three parts, three vertical bars around the cutter head, the head, and blades, there is no way any part of the parts"can be identified separately from,

and are capable of existing independently of, the utilitarian aspects of the nose hair cutter head or nose hair trimmer." 17 U.S.C. § 101; *Star Athletica*, 137 S. Ct. at 1008. The cutter head failed the first part of the *Star Athletica* test and is therefore not copyrightable.

Even if the cutter head passed the first part of the test, it will fail the second part of the test. The second "independent-existence requirement is ordinarily more difficult to satisfy. The judge must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica*, 137 S. Ct. at 1010. Neither part can be perceived as a three-dimensional work of art, and neither part can be separated from the useful article - this Nose Hair Trimmer. The parts are not capable of existing apart from the utilitarian aspect of the toy Nose Hair Trimmer.

Therefore, Defendant's copyrighted cutter head is not subject to copyright protection. Consequently, the copyright should be invalid and unenforceable.

### b) Plaintiff Will Suffer Irreparable Harm If the Court Withholds an Emergency TRO Relief

First, Plaintiff's business is entirely reliant on Amazon to sell its nose hair trimmer clipper, stating that "Plaintiff receives over 100% of its revenue from sales made on Amazon.com since its incorporation." Chen Decl. at ¶6, This relationship is now threatened as a result of Defendant's fraudulent copyright infringement complaints against Plaintiff, because Amazon not only "constantly monitors and scores each seller's 'account performance'" including how many infringement complaints have been filed against the seller, but Amazon also reserves the right to "deactivate selling accounts without advance warning.." *Id*. at ¶ 11. " Plaintiff is at an imminent risk of being suspended from selling any products whatsoever through Amazon, all as a result of Defendant's false copyright infringement accusations against

Plaintiff" *Id*. A suspension from Amazon, even if temporary, would be fatal to the Plaintiff's business. *Id*. at ¶ 6.Now, even without Amazon's suspension, Plaintiff's store's entire ASINs were delisted due to Defendant's false copyright infringement accusations against Plaintiff.

The loss of 100% of Plaintiff's revenues, *Id*. at ¶6 and the inevitable layoffs that would be triggered by the loss of business, *Id*. at ¶31 , would impose real harms on Plaintiff that could not be simply undone by a future decision in its favor. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc*., 549 F.3d 1079, 1090 (7th Cir. 2008) ("[S]imply returning [60% of plaintiffs business territory] following trial will not account for the incalculable losses [plaintiff] risks in the interim—namely, the potential loss of property, employees, or its entire business, as well as damage to its goodwill. These harms are both real and irreparable.").

Second, Plaintiff's ability to rectify Defendant's fraudulent copyright accusations is hampered by Amazon's policies, which only accept retractions of the intellectual property infringement claims if the rights owner clearly states that they made an error. This would require Defendant, the blackmailer/copyright owner, to communicate with Amazon directly. However, despite Plaintiff's best efforts to communicate with the Defendant, Defendant refused to voluntarily retract his complaints made to Amazon. Defendant's only condition to retract his fraudulent copyright infringement complaint is that Plaintiff pays him ransom money in the mount of $420,000. Plaintiff is therefore left without a way to remove the three copyright infringement complaints that threaten its business relationship with Amazon and the US customers, which is the foundation that Plaintiff's business is built on. "It is well recognized that the inability of a party to supply its products to customers as a result of a dispute will often result in a loss of goodwill sufficient to establish irreparable harm." *Country Fare LLC v. Lucerne Farms,* No. 11-CV-722 (VLB), 2011 WL 2222315, at *5 (D. Conn. June 7, 2011). "[g]iven the

14

likely total loss of its business, Plaintiff has established irreparable harm." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018); *see also Galvin v. N.Y. Racing Ass'n,* 70 F. Supp. 2d 163, 170–71 (E.D.N.Y.), *aff'd sub nom. Galvin v. N.Y. Racing Ass'n, In*c. (NYRA), 166 F.3d 1200 (2d Cir. 1998) (holding that "[i]n order to demonstrate irreparable injury under the business termination standard, the lost business relationship must be one that was vital to the continuation of the business" and that "[t]he total loss of a business clearly constitutes irreparable injury").

Third, Plaintiff currently has nearly 50,000 Nose Hair Trimmer in stock. Chen Decl. at ¶ 14. And Amazon will start destroying these products if Plaintiff's ASINs are not reinstated. *Id*. The value of these stocks exceeds half a million US dollars. Yet damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected. *Signode Corp. v. Weld-Loc Systems, Inc*., 700 F.2d 1108, 1111 (7th Cir.1983). The Asserted Copyright is registered under a Chinese national. The blackmail emails were sent by a Chinese national. The Amazon copyright infringement complaint were filed by a Chinese national. Till today, the real identity of the Defendant is still hiding behind its pseudonym TY. It is impossible for Plaintiff to be compensated or collect money from these blackmailers.

### c) Inadequacy of Legal Remedies

Regarding the adequacy of legal remiedies, Plaintiff can establish that money damages would not sufficiently compensate it for the loss of its business. "A damages remedy need be 'seriously deficient,' but not 'wholly ineffectual.'" *Girl Scouts*, 549 F.3d at 1095 (quoting *Roland Mach. Co. v. Dresser Inds., Inc*., 749 F.2d 380, 386 (7th Cir. 1984)). The U.S. Court of Appeals for the Seventh Circuit has identified several circumstances resulting in an inadequate legal remedy, including "when a damages award may come too late to save the plaintiff's business"

because the business "will lack the cash flow necessary to sustain the fixed costs of operating its business" without the injunction. *Id.* Even when the value of a plaintiff's business could be calculated, the Seventh Circuit nonetheless "recognize[s] that a longstanding business often has a vested interest in continuing in that business, not simply in receiving the monetary equivalent of its operation." *Id.* ; *see also Roland Mach.*, 749 F.2d at 386 (observing that "the right to continue a business . . . is not measurable entirely in monetary terms" when the plaintiff would rather run its business than "live on the income from a damages award" (citation omitted)). If the movant's loss would not result in the total ruin of its business, it may still defy accurate calculation of damages because of unquantifiable impairment of the business's capacity. *See, e.g., Girl Scouts*, 549 F.3d at 1095 (finding the plaintiff's damages "virtually impossible to compute" based in part on "the potential loss of institutional knowledge accompanying the unwanted termination of employees"); *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001) ("[I]t is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill[.]" (citation omitted).

The declaration of Mr. Chen, stated that there is a "substantial risk" that it would lack the resources to maintain its business if it lost its Amazon store. Chen Decl. at¶32. All products were taken down by Defendant's fraudulent copyright infringement complaint. *Id*. Mr. Chen also amply established that the total shut down of Plaintiff's Amazon store would cause a significant loss of revenue requiring major workforce reductions. *Id*. at¶31. Being forced to fire many of its employee would constitute a significant loss. Mr. Chen also stated that Plaintiff would lose goodwill in the market as Plaintiff's product is well recognized on Amazon, *Id*. at¶31, having more than 66,000 sales in less than three month, and ranking #1 in Nose & Ear Hair Trimmers.

*Id*. at ¶ 19. Plaintiff has shown that total shut down of its business threatens to cripple or destroy its business rather than simply cost it money. Money damages would not make Plaintiff whole.

### d) The Balancing of Harms Tips in Plaintiff's Favor

Plaintiff's product under the four de-listed ASINs will all be destroyed by Amazon in the near future. Chen Decl.at ¶ 14. A TRO is necessary to prevent Plaintiff from losing its selling rights on Amazon and to stop the destruction of those wrongfully de-listed products.

Here, Plaintiff seeks the Court to issues an emergency TRO and order Defendant to withdraw its Amazon complaints. If the TRO is granted, it would allow Plaintiff to reactive all affected product listings Amazon has removed. Should the Court ultimately find that the Asserted Copyright is valid and enforceable, and the Asserted Copyright is infringed, which Plaintiff believes to be highly unlikely, Defendant may recover damages based on well-established copyright infringement damage accounting practices. The damage recovery will account for sales made subsequent to withdrawal of the Amazon report.

### e) Public Interest Is Served by Entry of the Injunction.

The interest in the public is the last factor that the Court must examine. Here, public interest is compelling for several reasons.

First, the public has a strong interest in stopping abusive Amazon copyright practices and preserving market competition, especially where, as here, **the validity and enforceability of the copyright at issue are exceedingly dubious**. "[T]he public interest is served by such an injunction against the assertion of what at this preliminary stage clearly and convincingly appears to be wrongful and fraudulent claims to a right to a trademark." *Country Fare LLC*, No. 2011 WL 2222315, at *10; cf. *N.Y.C. Triathlon, LLC*, 704 F. Supp. 2d at 344 "[T]he public has

an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.").

Second, as court has recognized in other district, "the public interest is in fact benefited by granting a TRO, because absent [Amazon's] polices, designed to avoid [Amazon's] liability for intellectual property infringement, it would be the claimed [trademark] holder who would bear the burden of proving the [trademark] infringement." *Beyond BlondProds. v. Heldman,* 479 F. Supp. 3d 874,888 (C.D. Cal. 2020). "**To withhold a TRO would allow anyone to effectively shut down a competitor's business on [Amazon**] simply by filing the notice that the [competitor's] product allegedly infringes on the complaining party's [trademark]." *Id.*

Last, given the ubiquity of Amazon shopping to the general public, the public has an interest in a full and fair online marketplace. Here, through Defendant's fraudulent actions and statements, they are unfairly damaging Plaintiff's business. The public would only benefit from having more choice in the market, as opposed to have competition driven out by malicious complaint made by fraudulent trademark holder.

## IV.    THE EQUITABLE RELIEF PLAINTIFF SOUGHT IS APPROPRIATE

### a)  An TRO Directing Defendant to Retract the Amazon Trademark Infringement Complaint and Refrain From Filing New Complaint Is Appropriate

The authority of a court to issue a preliminary injunction under Rule 65 derives from "traditional principles of equity jurisdiction" and is "not altered by [Rule 65]." *Grupo Mexicano de Desarrollo S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999).

Plaintiff requests a temporary injunction requiring that the Defendant immediately retract the Amazon Copyright Infringement Complaint. Such injunction is necessary to allow Plaintiff to seek reactivation of the product listings removed by Amazon and to stop the ongoing harm to

Plaintiff such as loss of customers, loss of its ranking and reviews, deactivation of selling account, destruction of goods, and loss of goodwill. This narrow injunctive relief would strike the right balance in equity and benefits the public interest in general, especially since Amazon does not reactivate removed product listings unless the Rights Owner sends an e-mail to Amazon authorizing reactivation, or the Rights Owner submits a retraction.

Refrain Defendant from filing new complaint using the Asserted Right is also necessary Without such relief, Defendant may file new complaint using the Asserted Copyright over and over again, rendering Plaintiff experiences the same kind of harm and suffering repetitively.

### b) No Bond Should Be Required Because Defendant's Own No Trademark Rights for Plaintiff to Infringe

Here, a TRO requiring that the Defendant immediately retract the Amazon trademark infringement complaints will cause no harm to the Defendant. The TRO seeks nothing more than to maintain the status quo where both Plaintiff and Defendant can sell on Amazon.com and compete freely. It prevents the Defendant from profiting from an invalid and unenforceable copyright. For reasons stated above, Defendant will suffer no damage from the TRO since it has no valid copyright for Plaintiff to infringe. The Defendant still have opportunities to prove their case and show copyright damages (if even possible). Hence, there is no reason why a bond needs to be posted.

### V. CONCLUSION

For the foregoing reasons, an emergency ex parte Temporary Restraining Order is necessary and appropriate because Plaintiff has a strong likelihood of prevailing on its claims and would suffer irreparable harm in lost profits, lost customer, lost employee, lost reputation and lost goodwill should the interim relief be denied. Defendant, on the other hand, will not be

harmed by the issuance of the requested temporary restraining order, and this relief will best serve the public interest by preventing Defendant from continue to abuse the Amazon IP dispute resolution mechanism through fraudulently obtained copyright. Accordingly, Plaintiff respectfully requests that this Court grant the TRO Application in its entirely.

Date: January 19, 2023                    /s/ Ruoting Men
_____        _____
                                          Ruoting Men, Esq.
                                          GLACIER LAW LLP
                                          200 E. Randolph Dr., Ste. 5100
                                          Chicago, IL 60601
                                          Ruoting.men@glacier.law
                                          332-261-8227
                                          **_Attorney for Plaintiff_**